Larry Edwin WEDDLE *v.* STATE of Arkansas

CA CR 85-38                                    695 S.W.2d 840

Court of Appeals of Arkansas
Division I
Opinion delivered September 11, 1985

*William R. Simpson, Jr.*, Public Defender, and *Deborah R. Sallings*, Deputy Public Defender, by: *Carolyn P. Baker*, Deputy Public Defender.

*Steve Clark*, Att'y Gen., by: *Joel O. Huggins*, Asst. Att'y Gen., for appellee.

Tom Glaze, Judge. In a jury trial in Perry County Circuit Court, appellant was found guilty of attempted first degree murder, in violation of Ark. Stat. Ann. § 41-701 (Repl. 1977), and sentenced to thirty years in the Department of Correction. On appeal, he contends the trial court erred in failing to grant a mistrial for remarks made by the prosecutor in his closing argument. We affirm.

It is undisputed that appellant shot his girlfriend, Carolyn Shamblin, six times, at a deserted area in Perry County on the night of 18 June 1984. Later that night, appellant was arrested for public intoxication in Little Rock. The next morning, he told a policeman that he thought he had done something terrible and needed to talk to someone about it. When another officer questioned him about being upset, appellant responded, "Upset, hell, I killed her." Appellant led law enforcement officers to the area where he left Shamblin. The officers found Shamblin alive, but seriously wounded. In a statement to the police, appellant said that he remembered having the gun in his hand and pointing it at Shamblin, but then remembered nothing else. At trial, appellant did not deny shooting Shamblin, but denied possessing the premeditation and deliberation necessary to prove him guilty of attempted first degree murder.

Appellant's sole point for reversal is based upon the prosecutor's following remarks made in his closing argument:

For instance, in criminal attempt it says you have to have a premeditated or deliberated purpose to take someone's life. And then you look over here on premeditation and deliberation and it's about two paragraphs, a weighing of the consequences, you know, and a course of conduct as opposed to sudden impulse. But you look down here and it says it's not necessary that the state might have existed for any length of time. It's just necessary it's formed before the homicidal act. It can be formed in an instant. And the thing about premeditation and purpose of causing, it says you have to have premeditation and a purpose of causing the death of another person. Now purposeful conduct is kind of a new phrase and it's something that Arkansas law didn't have before '75 or so. For all those years we had common law. It means the same thing. It's a—you have a conscious object to do something. Your purpose says I have a conscious object to take that gun and pull that hammer back and point it and fire it knowing that projectile is going to strike and kill that person. You know, how do you show purpose. Not many of us walk around and have some way of telling people. We don't put a red "A" on a forehead to mark us. We don't usually tell what we're doing unless you're teaching a child or something. You generally tell a person's purpose by what they've done. *You know, that old phrase, a person is presumed to have intended a natural consequences (sic) of his acts, well, if I'm standing here and I go over here and pick up these sunglasses, what's your assumption that you're going to make, just everyday assumption. That I intend to go over and pick up the glasses.* Now what we make from the assumption and this is—(Emphasis supplied)

▮▮ Appellant contends the prosecutor's remarks effectively shifted the burden of persuasion on the question of intent to appellant. He rests his argument on rationale found in two United States Supreme Court cases, *Francis* v. *Franklin*, ___ U.S. ___, 37 Crim.L.Rep. 3019 (April 29, 1985) and *Sandstrom* v. *Montana*, 442 U.S. 510 (1979). In *Sandstrom*, the defendant argued that, although he killed the victim, he did not do so "purposely or knowingly," and therefore was not guilty of deliberate homicide. Accordingly, he objected to the trial court instructing the jury

that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts," arguing such instruction had the effect of shifting the burden of proof on the issue of purpose or knowledge. The Supreme Court held the instruction unconstitutional because the jury may have interpreted the judge's instruction as constituting either a burden-shifting presumption or a conclusive presumption—either interpretation depriving the defendant of his right to due process of law. In *Francis* v. *Franklin, supra,* the Supreme Court, considering similar language to that given the jury in *Sandstrom,* held such instructions unconstitutional, even though they differed from those in *Sandstrom* in that the jury was explicitly informed that the presumption "may be rebutted." In so holding, the Court stated, "[A] mandatory rebuttable presumption does not remove the presumed element from the case if the State proves the predicate facts, but it nonetheless relieves the State of the affirmative burden of persuasion on the presumed element by instructing the jury that it must find the presumed element unless the defendant persuades the jury not to make such a finding." 37 Crim.L.Rep. at 3022.

▇▇▇ Neither *Sandstrom* nor *Francis* control the situation at hand. First, the language or remarks giving rise to the legal issue here ensue from the prosecutor's closing statement, not as a result of a trial court's instruction. In fact, the trial court in this cause instructed the jury that the State must prove each element of the crime beyond a reasonable doubt, that the defendant is presumed innocent, and that the attorneys' arguments are not evidence, but are made only to help the jury understand the evidence and applicable law. Second, while the prosecutor argued the appellant (Weddle) was presumed to have intended the natural consequences of his acts, we believe his remark, taken in context with the evidence presented and instructions given the jury, was merely a permissive inference suggesting to, not requiring of, the jury a possible conclusion to be drawn if the State proved predicate facts.[1] In this respect, the trial court instructed

---

[1] See *Francis* at p. 3021 where the Supreme Court states: "A permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proven. Such inferences do not necessarily implicate the concerns of *Sandstrom.* A permissive inference violates the Due Process Clause only if the suggested conclusion is

the jury that the State, in proving appellant committed attempted first degree murder, must show (1) he intended to commit the offense, (2) he purposely engaged in conduct . . . intended to culminate in the offense and (3) his conduct was strongly corroborative of the criminal purpose. The court further instructed that the State must show appellant acted with conscious object in committing such crime and that he formed that intention before acting as a result of a weighing in the mind of the consequences of a course of conduct, as distinguished from acting upon sudden impulse without the exercise of reasoning powers. After the trial court gave these and other instructions to the jury, the prosecutor reviewed the evidence which reflected that the appellant placed his single-action weapon to the back of Shamblin's head and fired it six separate times. In sum, the prosecutor based his remarks upon the evidence in the record and suggested to the jury how it might infer from appellant's actions that he acted with premeditation and deliberation. It is also of no small moment that Shamblin survived this living nightmare to testify that appellant had not been drinking and was not drunk when the shooting occurred—another reason the jury could infer that appellant acted with the required mental culpability to commit the crime with which he was charged.

We hold the trial court correctly denied appellant's motion for mistrial and therefore affirm.

Affirmed.

CRACRAFT, C.J., and MAYFIELD, J., agree.

---

not one that reason and common sense justify in light of the proven facts before the jury."